THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
Baltimore Division

| | |
|---|---|
| ALLYSON RISCART<br>149 Northdale Road<br>Glen Burnie, MD 21060<br>Plaintiff,<br>v.<br><br>ANNE ARUNDEL COMMUNITY COLLEGE<br>101 College Parkway,<br>Arnold, MD 21012<br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)  Civil Action No.<br>)<br>)<br>)<br>) |

## **COMPLAINT**

Plaintiff Allyson Riscart ("Ms. Riscart" or "Plaintiff"), by and through her attorneys Clark Law Group, PLLC, files this action, following her exhaustion of administrative remedies, and alleges as follows:

## **NATURE OF ACTION**

1. This is a challenge to Defendant Anne Arundel Community College's ("Defendant" or "AACC") unlawful discrimination, failure to accommodate, interference with rights, and retaliation in violation the Maryland Fair Employment Practices Act, Md. Code, State Gov't, § 20-601 et seq. ("FEPA"), the Americans with Disabilities Act of 1990, as amended, 42 U.S.C. § 12101 et seq. ("ADA"), and the Family and Medical Leave Act of 1993, as amended, 29 U.S.C. § 2601 et seq. ("FMLA").

## **JURISDICTION AND VENUE**

2. All of the allegations contained in the foregoing paragraphs of this Complaint are incorporated by reference herein as if the same were set forth at length.

3. The United District Court for the District of Maryland has original subject-matter jurisdiction over the instant action pursuant to 28 U.S.C. § 1331 and 1343(a)(4) because it arises under the laws of the United States and seeks to redress for violations of civil rights.

4. The Court has supplemental jurisdiction over the state law claims in this action pursuant to 28 U.S.C. § 1367(a) as the state law claim is part of the same case and controversy as the claims arising under the ADA and FMLA.

5. The court may properly maintain personal jurisdiction over Defendant because the Defendant conducts business in the state of Maryland.

6. Venue is proper in the United States District Court for the District of Maryland, Baltimore Division, because the actions and omissions alleged occurred within the Division.

**EXHAUSTION OF ADMINISTRATIVE RMEDIES AND STATUTE OF LIMITATIONS**

7. All of the allegations contained in the foregoing paragraphs of this Complaint are incorporated by reference herein as if the same were set forth at length.

8. Plaintiff has satisfied the procedural and administrative requirements for proceeding under the ADA and FEPA as follows:

    a. On July 16, 2018 Plaintiff filed a charge of disability discrimination and retaliation with the U.S. Equal Employment Opportunity Commission ("EEOC").

    b. Plaintiff's charge was cross-filed with the Maryland Commission on Civil Rights.

    c. On December 30, 2019, Plaintiff requested that the EEOC issue her a Notice of Right to Sue.

    d. Plaintiff has filed the instant Action within 90 days of her request for the EEOC to issue her a Notice of Right to Sue.

    e. Plaintiff's FEPA allegations are timely because her claims are brought within the statute's two-year statute of limitations. Md. Code, State Gov't § 20-1013(a)(3).

9. Plaintiff's FMLA allegations are timely because her claims are brought within the statute's two-year statute of limitations.

## PARTIES

10. All of the allegations contained in the foregoing paragraphs of this Complaint are incorporated by reference herein as if the same were set forth at length.

11. Plaintiff is a resident of Glen Burnie, MD.

12. Defendant is a community college located in Arnold, Md.

13. Defendant employs more than fifty (50) individuals.

14. Defendant employs more than fifty (50) individuals within a seventy-five (75) mile radius of its Arnold, MD location.

15. Defendant is an "employer" within the meaning of 42 U.S.C. § 12111(5)(A) and Md. Code, State Gov't 20-601(d).

16. Defendant is an "employer" within the meaning of 29 U.S.C. § 2611(4).

## FACTUAL ALLEGATIONS

### Ms. Riscart's Mental Health Condition

17. All of the allegations contained in the foregoing paragraphs of this Complaint are incorporated by reference herein as if the same were set forth at length.

18. Ms. Riscart suffers from anxiety and a mood disorder.

19. Ms. Riscart's anxiety and a mood disorder are mental health conditions which substantially impact Ms. Riscart's concentrating, thinking, communicating, and interacting with others when her conditions flare up.

20. Ms. Riscart mental conditions involve continuing treatment by her mental health provider several months per year.

21. Ms. Riscart's mental health conditions are disabilities within the meaning of the ADA and FEPA.

22. Ms. Riscart's mental health conditions are serious health conditions within the meaning of the FMLA.

**Almost Immediately After Disclosing Her Disability,
Defendant Begins Subjecting Ms. Riscart to a Hostile Work Environment**

23. Ms. Riscart began her employment with Defendant in 2006 as a work study student.

24. By 2010, Ms. Riscart held the position of a Student Services Assistant.

25. In or around July 2010, Ms. Riscart informed Defendant's Director of Response Center, Verna Marlow, that she had had anxiety and was undergoing continual treatment for her condition.

26. Following this disclosure, Ms. Marlow would repeatedly attempt to trigger Ms. Riscart's anxiety by trying to scare her and then start laughing when she succeeded.

27. When Aline Humphries became Ms. Riscart's supervisor, she overly scrutinized Ms. Riscart's work. Ms. Humphries stated that the scrutiny was at Ms. Marlow's instruction.

28. For example, Ms. Humphries would comment whenever Ms. Riscart would log into her computer or her phone one minute late. Her coworkers were not subject to similar comments when they were a minute late.

29. Ms. Humphries would also require Ms. Riscart to seek her permission before moving on to a new duty. She did not have that requirement for other employees.

## Ms. Riscart Has Requested FMLA Leave Since 2014

30. In late 2014, Ms. Riscart was incurring flare ups of her condition which resulted in her requesting and being granted intermittent FMLA leave through December 2015.

31. In or around June 2016, Ms. Riscart again requested and was granted FMLA leave through May 2017.

32. Defendant's Human Resources Consultant Erin Byrd instructed Ms. Riscart to first use all of her accrued sick or annual leave before using her FMLA leave even, if the reason for the leave was because of her mental health condition.

33. Once Ms. Riscart had exhausted her accrued sick or annual leave, Ms. Byrd instructed Ms. Riscart to call in sick and then about once a week or once a month notify Ms. Byrd that the reason for her absences were for her mental health condition.

34. Despite Ms. Byrd issuing these instructions and despite knowing Ms. Riscart was absent because of her mental health condition, on May 17, 2017, Ms. Marlow issued Ms. Riscart a written warning that any future absences without pay would result in disciplinary action including termination.

35. On or around November 13, 2018, the U.S. Department of Labor's Wage and Hour Division found that Defendant was in violation of FMLA regulations requiring that written notice of FMLA eligibility requirements to be given to employees. 29 CFR §§ 825.306 (certifications) and 825.308 (recertifications).

## Ms. Riscart's 2017 FMLA Request

36. In the summer of 2017, Ms. Riscart and Ms. Marlow discussed Ms. Riscart's leave usage.

37. Ms. Marlow informed Ms. Riscart that she could not use annual leave when she was ill because of her mental health condition.

38. Ms. Riscart reported this instruction to Director of Human Resources Suzanne Boyer and requested clarification whether she could use annual leave.

39. Ms. Boyer confirmed that Ms. Riscart could use either sick or annual leave if available.

40. Ms. Boyer then instructed Ms. Riscart to submit a recertification of her request for FMLA leave.

41. After obtaining the requested document from her provider, Ms. Riscart handed the recertification to Ms. Boyer.

42. From the summer of 2017 to in or around January 2018, Ms. Riscart repeatedly used her sick and annual leave for her mental health condition and therefore regularly followed up with Ms. Boyer about the status of her FMLA request, to which there was no response.

43. By the end of 2017, Ms. Riscart had almost exhausted her sick leave.

44. Ms. Boyer escalated the FMLA request to Director of Human Resources Operations Lisa Sanford.

45. In late January 2018, Ms. Sanford verbally denied Ms. Riscart's FMLA request for four days of FMLA leave per month.

46. Ms. Sanford did not state why AACC could not accommodate her request for four days of medical leave per month or articulate how such a request would create a hardship.

47. Ms. Riscart said that she could see if her leave request could be adjusted by her provider, but Ms. Sanford said "no" and that Ms. Riscart should just use her accrued annual leave in lieu of her exhausted sick leave.

48. Ms. Riscart also complained to Ms. Sanford that Ms. Marlow was not treating her fairly, yelling at her, treating her differently than her coworkers, "drilling" her about her absences, requiring Ms. Riscart to make up time she missed from her normal duties when she was assisting students per the request of other managers, how Ms. Marlow would intentionally try to scare her, and how Ms. Marlow had instructed Ms. Humphries to scrutinize her work.

49. When Ms. Sanford did not act on this complaint, Ms. Riscart escalated the issue to Vice President Felicia Patterson on or around January 29, 2018.

50. Ms. Patterson stated that she would talk to Suzanne Boyer, but Ms. Riscart did not receive a formal response or any resolution to her complaint.

## After Expressly Invoking FMLA Again, Ms. Riscart Is Called "Crazy" and Denied Her Request for Leave

51. In June 2018, having now almost exhausted all her sick and annual leave, Ms. Riscart submitted a note from her mental health provider revising Plaintiff's previous January 2018 intermittent FMLA request.

52. On June 14, 2018, Defendant approved Ms. Riscart's request for intermittent FMLA leave.

53. Defendant did not retroactively designate the sick or annual leave which Ms. Riscart had used as FMLA leave, even though it had been on notice that Ms. Riscart was taking leave for her mental health condition throughout the year.

54. In early June 2018, Ms. Marlow yelled at Ms. Riscart prior to her beginning her coverage of the Information Desk at Defendant's Student Services.

55. After Ms. Riscart completed her coverage, she requested that Ms. Marlow not yell at her again.

7

56. In response, Ms. Marlow began yelling at Ms. Riscart and shouted, "You're crazy!"

57. Plaintiff believes that Ms. Marlow shouting that Ms. Riscart was "crazy" was in reference to her disability.

58. When Ms. Riscart stated her intent to go to Human Resources, Ms. Marlow said, "Oh no, you're not!"

59. Ms. Riscart reported Ms. Marlow's discrimination to Ms. Byrd.

60. One or more of Ms. Riscart's coworkers, including on information and belief Quantisha Watson, reported Ms. Marlow calling Ms. Riscart "crazy" to Ms. Byrd.

61. Ms. Byrd confirmed to Ms. Riscart and Ms. Marlow that it was reported to her that Ms. Marlow had called Ms. Riscart "crazy."

62. On information and belief, Ms. Marlow was not disciplined for calling Ms. Riscart "crazy."

**Defendant Denied Ms. Riscart's Request for Leave Without Engaging in the Interactive Process or Requesting Clarification Whether the Absence of FMLA Qualifying**

63. On June 19, 2018, Ms. Riscart was experiencing a flare up of her mental health condition, left work, and advised her supervisor that she was taking intermittent FMLA leave consistent with her previously approved request.

64. Ms. Marlow refused to grant Ms. Riscart's request for FMLA leave, claiming that Ms. Riscart was absent only because she felt nauseous due to cigarette smoke.

65. In response, Ms. Riscart affirmed the reason for her absence was because of her mental health condition, not because of the smoke, and that, consistent with AACC's policy and instruction, had not provided further detail to her supervisor about her need for leave beyond that it as for an FMLA reason.

66. Ms. Marlow did not contact Ms. Riscart's her mental health provider to confirm the reason for her absence as permitted by 29 C.F.R. § 825.307.

67. Ms. Marlow did not discuss or document any discussion with Ms. Riscart concerning any dispute whether Ms. Riscart's leave was FMLA qualifying as required by 29 C.F.R. § 825.301(c).

68. Ms. Marlow did not engage in the interactive process to determine whether Ms. Riscart's request for four hours of leave in excess to now exhausted accrued leave would be an undue burden.

**Defendant's Ever-Switching Reasons for Terminating Ms. Riscart**

69. On June 28, 2018, Respondent terminated Ms. Riscart.

70. When Ms. Riscart asked why she was being terminated, Ms. Sanford responded that the termination was for performance.

71. After Ms. Riscart pointed out that all her evaluations were positive, Ms. Sanford back tracked and stated that the reason for the termination was because of Ms. Riscart's absences.

72. Ms. Riscart did not receive any performance related discipline or was placed on a performance improvement plan during the course of her employment with Defendant.

73. Ms. Riscart later applied for unemployment benefits with the Maryland Division of Unemployment Insurance.

74. In responding to Plaintiff's application for unemployment benefits, Defendant reversed course yet again and claimed that it terminated Ms. Riscart for alleged performance related reasons and her absences.

9

75. Before the EEOC, Defendant confirmed that Ms. Riscart's performance was satisfactory and not the reason for her termination.

76. Instead, Defendant claimed that Ms. Riscart was supposedly terminated because of her absences and excessive leave use.

77. Specially, Defendant alleged that Ms. Riscart's June 19, 2018 absence exhausted all of her accrued leave, put her on leave without pay status, and therefore resulted in Ms. Riscart's termination.

78. Before the EEOC, Defendant produced a termination memorandum by Ms. Marlow wherein she assumed that Ms. Riscart's reason for taking leave on June 19, 2018 was not FMLA qualifying.

79. Before the EEOC, Defendant produced several documents from Defendant's management and human resources personnel which made negative statements concerning Ms. Riscart's use of leave.

### Defendant Did Not Terminated Michele Brown for Similar Conduct

80. On information and belief, Defendant alleged that another Student Services Assistant, Michele Brown, also used too much leave in or around 2018.

81. Unlike with Ms. Riscart, Ms. Brown was not terminated, only suspended for one week.

82. On information and belief, Ms. Brown was not disabled, did not request FMLA leave, did not complain of discrimination, and did not request an accommodation for a disability.

### COUNT I: TERMINATION BECAUSE OF DISABILITY

83. All of the allegations contained in the foregoing paragraphs of this Complaint are incorporated by reference herein as if the same were set forth at length.

84. Ms. Riscart has a disability.

85. Defendant was aware of Ms. Riscart's disability.

86. Defendant terminated Ms. Riscart because of her disability in violation of the ADA and FEPA.

## COUNT II: FAILURE TO ACCOMMODATE

87. All of the allegations contained in the foregoing paragraphs of this Complaint are incorporated by reference herein as if the same were set forth at length.

88. Since 2014, Ms. Riscart has repeatedly requested accommodations for her disability in the form for leave requests when experiencing a flare up of her disability.

89. Most recently, in June 2018, Ms. Riscart requested an accommodation in the form of FMLA leave for her disability.

90. On June 19, 2018, Ms. Riscart experienced a flare up of her disability and requested leave for her condition.

91. Rather than engage Ms. Riscart in an interactive process to determine whether her request would create an undue hardship, Defendant terminated Ms. Riscart.

92. Defendant's termination of Ms. Riscart was a failure to accommodate.

## COUNT III: TERMINATION BECAUSE OF ACCOMMODATION REQUESTS

93. All of the allegations contained in the foregoing paragraphs of this Complaint are incorporated by reference herein as if the same were set forth at length.

94. Since 2014, Ms. Riscart has repeatedly requested accommodations for her disability in the form for leave requests when experiencing a flare up of her disability.

95. Most recently, in June 2018, Ms. Riscart requested an accommodation in the form of FMLA leave for her disability.

96. On June 19, 2018, Ms. Riscart experienced a flare up of her disability and requested leave for her condition.

97. Nine days later, Defendant terminated Plaintiff.

98. Defendant terminated Plaintiff because of her accommodation requests.

**COUNT IV: TERMINATION BECAUSE OF INTERNAL COMPLAINTS**

99. All of the allegations contained in the foregoing paragraphs of this Complaint are incorporated by reference herein as if the same were set forth at length.

100. In January 2018, Ms. Riscart complained to Defendant's management/human resources personnel that she was being discriminated against by Ms. Marlow.

101. In early June 2018, Ms. Riscart complained that Ms. Marlow yelled at Ms. Riscart and called her "crazy," a reference to her disability.

102. Shortly thereafter, Defendant terminated Ms. Riscart.

103. Defendant terminated Ms. Riscart because of her complaints of discrimination.

**COUNT V: HOSTILE WORK ENVIRONMENT**

104. All of the allegations contained in the foregoing paragraphs of this Complaint are incorporated by reference herein as if the same were set forth at length.

105. Throughout her employment, Ms. Marlow subjected Ms. Riscart to a hostile work environment because of her disability.

106. Ms. Marlow's conduct included yelling at Ms. Riscart, treating her differently than her coworkers, "drilling" her about her absences, requiring Ms. Riscart to make up time she missed from her normal duties when she was assisting students per the request of other managers, intentionally try to scare Ms. Riscart, instructing Ms. Humphries to scrutinize Ms. Riscart's work, and shouting that Ms. Riscart was crazy.

107.     The hostile work environment was severe or pervasive enough to alter Ms. Riscart's terms and conditions of employment.

108.     Defendant was aware of the hostile work environment and failed to take reasonable measures to prevent it.

## COUNT VI: FMLA INTERFERENCE

109.     All of the allegations contained in the foregoing paragraphs of this Complaint are incorporated by reference herein as if the same were set forth at length.

110.     Since 2014, Ms. Riscart repeatedly requested leave because of her serious health condition.

111.     Pursuant to Defendant's instructions, Ms. Riscart only expressly requested FMLA leave after exhausting her sick and annual leave.

112.     Defendant's instruction to only request FMLA leave after the exhaustion of her sick and annual leave interfered with Ms. Riscart's rights under the FMLA.

113.      Defendant's interference with Ms. Riscart's FMLA rights prejudiced her by Defendant later employing Ms. Riscart sick and annual leave use as justification for its decision to terminate her.

114.     On June 19, 2018, Ms. Riscart requested FMLA leave for her serious health condition.

115.     Defendant denied Ms. Riscart's June 19, 2018 request.

116.     Defendant's denial of the FMLA leave request interfered with Ms. Riscart's rights under the statue.

117. Defendant's interference with Ms. Riscart's FMLA rights prejudiced her by Defendant later employing Ms. Riscart's June 19, 2018 absence as a justification for its decision to terminate her.

118. Defendant's conduct was willful.

### COUNT VII: FMLA RETALIATION

119. All of the allegations contained in the foregoing paragraphs of this Complaint are incorporated by reference herein as if the same were set forth at length.

120. On June 19, 2018, Ms. Riscart requested to use FMLA leave.

121. Nine days later, Defendant terminated Ms. Riscart.

122. Defendant terminated Ms. Riscart because of her request for FMLA leave.

123. Defendant's conduct was willful.

### PRAYER FOR RELIEF

Plaintiff respectfully requests that this Court grant the following relief:

A. Entry of judgment in favor of Ms. Riscart and against Defendant;

B. Back pay;

C. Front pay in lieu of reinstatement;

D. Compensatory damages;

E. Statutory damages pursuant to the FMLA;

F. Attorneys' fees and costs; and

G. Other such relief as may be appropriate to effectuate the purposes of the ADA, FMLA, FEPA.

## **DEMAND FOR TRIAL BY JURY**

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands a trial by jury on all questions of fact raised by this Complaint.

                                              Respectfully submitted,
                                              /s/ Jeremy Greenberg
                                              Jeremy Greenberg (13671)
                                              Denise M. Clark (17385)
                                              Clark Law Group, PLLC
                                              1100 Connecticut Ave. N.W.,
                                              Suite 200
                                              Washington, D.C. 20036
                                              (202) 293-0015
                                              jgreennberg@benefitcounsel.com
                                              dmclark@benefitcounsel.com

## **VERIFICATION**

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury under the laws of the United States of America that 1) I have reviewed this Complaint; 2) Regarding the allegations of which I have personal knowledge, I believe them to be true; and 3) Regarding the allegations of which I do not have personal knowledge, I believe them to be true based on specified information, documents, or both and the foregoing is true and correct.

*/s/ Allyson Riscart*
_____
Allyson Riscart

Doc ID: ac9a3b41eef8c846bab3696073da46de2770bfcb